### Sylvester Berg v. The State.

#### No. 1091.    Decided November 15, 1911.

#### Rehearing denied January 15, 1912.

**1.—Murder—Jurisdiction—Change of Venue—Practice in District Court—Transcript.**

Where, in a prosecution for murder, the attorneys of both parties agreed orally that the venue of the case should be changed back to the county from which it had come by change of venue, and the court duly entered an order changing back the venue to the county where the prosecution arose, this divested the court making such order of further jurisdiction, and a plea to the

jurisdiction in the county to which the case had been last ordered, on the ground that no transcript was filed of the last change of venue, was correctly overruled upon an oral showing without objection that the venue was then changed back to the original county; the transcript being filed thereafter, which had been omitted to be done at the time of said plea by some oversight or delay; it also appearing that defendant had entered into a new bond in said last named county and had never questioned the matter for nearly two years, and until a motion for continuance had been overruled.

**2.—Same—Continuance—Bill of Exceptions.**

In the absence of a bill of exceptions an order overruling the motion for a continuance, on account of the absence of counsel and the witnesses named therein, can not be considered on appeal.

**3.—Same—Substitution of Indictment.**

Where the original indictment had been lost, there was no error in permitting the district attorney to substitute the same.

**4.—Same—Jury and Jury Law—Challenge.**

Where it was not claimed that the juror who sat upon defendant's case, and whom he could not challenge because he had exhausted his challenges, had any formed opinion, bias or prejudice, there was no error.

**5.—Same—Requested Charges—Practice on Appeal.**

Where no reason is assigned in the motion for new trial why requested charges should have been given, but it is only stated that the court erred in not giving them, there was nothing to review.

**6.—Same—Rule Stated—Bill of Exceptions.**

The primary object of a bill of exceptions reserved to the charge of the court is to call the attention of the trial judge to the particular matter complained of, so that he may be afforded an opportunity to correct any error he may have fallen into, and to enable the Appellate Court to ascertain what error was committed, and this can not be done by a general exception, but must appear by the allegations of the bill.

**7.—Same—Rule Stated—Motion for New Trial.**

In the absence of a bill of exceptions, when the matter is complained of for the first time in a motion for a new trial, the reasons must be stated as specifically as is required in a bill of exceptions.

**8.—Same—Postponement—Jurisdiction.**

Where the court had jurisdiction, a motion to postpone on account of want of jurisdiction was correctly overruled.

**9.—Same—Evidence—Motion to Strike Out.**

Where no exception was reserved to the testimony of the State's witness, and the same was admitted without objection, a motion to strike out was correctly overruled, and the defendant could not reach this matter by a special charge withdrawing said testimony; especially, where no reasons were given in the special charge why said testimony was not admissible.

**10.—Same—Jury and Jury Law—Newspapers—Bill of Exceptions.**

In the absence of a bill of exceptions showing that the jury read newspapers during the trial, and that the same resulted in injury to the defendant, there was no error.

**11.—Same—Evidence—Bill of Exceptions.**

In the absence of a bill of exceptions to the testimony of a witness given on a former trial, the same can not be considered on appeal; besides, this testimony was admitted without objection.

**12.—Same—Charge of Court—Murder in the First Degree.**

Where the court instructed on murder in the first degree for the purpose

of better enabling the jury to understand the essentials of murder in the second degree and for no other purpose, and the defendant was convicted of murder in the second degree, there was no error; although defendant had been acquitted of murder in the first degree at a former trial.

### 13.—Same—Charge of Court—Motion for New Trial.

The motion for new trial must specifically point out the error in the charge of the court, and a general exception to the charge of the court in said motion can not be considered on appeal.

### 14.—Same—Arrest of Judgment—Jurisdiction.

Where the court had jurisdiction, a motion in arrest of judgment for want of jurisdiction was correctly overruled.

### 15.—Same—Assignments of Error—Practice on Appeal.

On appeal, the court looks alone to the bills of exception and the motion for new trial, and assignments of error filed in the Appellate Court or contained in the brief can not be considered.

Appeal from the District Court of Jefferson. Tried below before the Hon. W. H. Pope.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The evidence showed that the homicide grew out of a domestic quarrel concerning the children of deceased; that the deceased had been married to defendant's sister, with whom he had several children when she died; that these children were minors and were left in the custody of defendant's mother; that deceased married again and lived in Waco, and defendant lived with his mother and these children in Beaumont; that some litigation had ensued concerning these children and deceased was finally appointed guardian of the estate of his children by the district judge of the Waco district; that thereupon some correspondence with reference thereto was had by the attorneys of defendant's mother and the said district judge, which also involved a habeas corpus proceeding concerning said children which deceased was about to institute, whereby the deceased was informed that he might take the children; that said children were still with their grandmother on the day of the homicide when deceased and his second wife came after them, but for some reason, possibly because the children refused to go with them, failed to get them, and that while deceased and his wife were waiting at the railway station for a train to Waco the homicide occurred.

Mrs. Remington, the second wife of deceased, who had remarried, testified that some feeling arose between deceased on one side, and defendant, his mother, and other members of the family on the other side, and that when she and deceased went to the house for said children and on the way back to the station, defendant and deceased had some wordy altercation, but that deceased gave defendant no provocation to assault him, but simply insisted on having his children, remarking that defendant was armed and he, deceased, was unarmed, etc.; that defendant then left them and preceded them to the station, and when they arrived there was in conversation with

some of the station men; that shortly after they arrived the defendant called deceased, saying that he wished to speak to him, and as the latter came near him, defendant fired the fatal shot, and thereafter shot again at deceased when he was down; that deceased was not armed and was doing nothing to provoke defendant, etc., at the time. There were other eyewitnesses to the shooting, who testified to substantially the same state of facts.

The defendant testified that he in no manner opposed deceased in getting his children, but told him he could have them, but that the children refused to go with deceased; that deceased then became angry and threatened to go back to town and get a gun, and said that he would have the children or die, etc.; that he abused defendant on the way to the station, etc.; that defendant went back to his mother's house and found her and the children crying and excited, and that his mother then told him for the first time that the deceased had, in kicking his first wife (defendant's sister), not only killed her, but her child in the womb; that this excited defendant and he went back to town to the station where, shortly after he had arrived, he noticed defendant and his second wife approaching, and that while he was talking to others at the station, deceased came up suddenly behind him and that when defendant turned toward him, he believed deceased was trying to draw a weapon, when defendant shot him; that defendant was excited at the time, etc.

Other witnesses for the defense testified that deceased had threatened to go to town and get a gun, etc. There was also testimony that deceased, some time before the homicide, in Waco, had said to a number of parties that he expected serious trouble whenever he went for his children, declaring that he would get his children or die and that he might come back in a coffin, etc., alluding to his pistol at the time, etc. The testimony is very voluminous, covering some two hundred and seventy-five typewritten pages, and much of it · is of an impeaching character; the above statement, however, is the substance of the salient facts in the case. The court instructed the jury on murder, self-defense and manslaughter.

*Duff & Duff* and *R. A. John* and *Watts & Wheat,* for appellant.— The District Court of Jefferson County had judicially determined that the appellant could not have a fair and impartial trial in Jefferson County, and for that reason had sent the case to Galveston, and the Bill of Rights guaranteed to appellant a trial by an impartial jury, which the court had determined he could not have in Jefferson County. Under such conditions the court could not, in the absence of the defendant and without his personal consent, make any valid order sending the case back to Jefferson County, in violation of the Bill of Rights. Section 10, Bill of Rights.

On point after change of venue, cause can only be returned to original county by the personal consent of defendant. State v.

Swepson, 81 N. C., 571; Hourigan v. Comm., 94 Ky., 520; Paris v. State, 36 Ala., 232.

Consent can not confer jurisdiction of the subject matter: Smith v. Parks, 55 Texas, 82; Loftin v. Nalley, 28 Texas, 127; Campbell v. Wilson, 6 Texas, 391.

On passing on assignment of error the court will look to the statement of facts: Booker v. State, 3 Texas Crim. App., 227; Carter v. State, 5 Texas Crim. App., 458; White v. State, 9 Texas Crim. App., 41.

Court must limit evidence on impeaching testimony: Parris v. State, 35 Texas Crim. Rep., 82; Owens v. State, id., 345; Wade v. State, 37 Texas Crim. Rep., 401.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case appellant, on a trial, was convicted of murder in second degree and sentenced to five years confinement in the penitentiary.

1. It appears from the record that appellant was indicted, charged with murder, at the June term, 1904, of the District Court of Jefferson County. Thereafter on June 17, 1907, the court on his own motion changed the venue in this cause to Galveston County. A proper transcript was made out and all the papers sent to Galveston County and docketed in that court. The case was never called for trial in Galveston County, but the county attorney and attorneys for defendant agreed that the venue might be changed from Galveston County back to Jefferson County. It was furthermore agreed, in order to avoid expense, the defendant need not go in person to Galveston and make recognizance there, but he could enter into a new bond when the papers were received back at Beaumont; and thereafter the defendant did enter a bond conditioned for his appearance before the District Court of Jefferson County, in accordance with said agreement.

It is shown by the record that early in 1909 all the papers originally sent to Galveston (including the indictment) were returned to the clerk at Beaumont. The record remained in this condition until October 17, 1910, when the case was called for trial, and defendant appeared and filed a motion for continuance. Not finding with the papers a transcript of the record of the proceedings had in Galveston, defendant then filed a plea to the jurisdiction of the District Court of Jefferson County, alleging, as the record did not show any judgment or order changing the venue back to Jefferson County, the court was without jurisdiction to hear the cause, as the records on file there showed that court had divested itself of jurisdiction by order duly entered. The county attorney contested the matter, and without objection was permitted to show by oral testimony the verbal agreement to change the venue back to Jefferson County;

the time of the return of the papers; the fact that defendant had given bond in accordance with the agreement, and had filed an application to continue the cause. After hearing this testimony, and upon promise of the county attorney to secure and file a copy of the proceedings had in Galveston County, the court overruled the plea to the jurisdiction. Thereafter he did secure and file a copy of the order made by the District Court of Galveston County on the 28th day of November, 1908, changing the venue of this cause back to Jefferson County.

On the motion for a new trial evidence was heard, and proof was made by the clerk of the District Court of Galveston County, that at the time the original papers were returned he also sent a certified copy of the orders upon the docket and minutes of the District Court of Galveston County, and received notice of delivery of all the papers to the clerk of the District Court of Jefferson County, through the express company, the papers having been sent by express. That this was all done in February, 1909, or twenty months before the case was called for trial in Jefferson County.

When in November, 1908, the District Court entered an order reciting that by agreement of all the parties the venue was changed back to Jefferson County, the court at Galveston was divested of all jurisdiction, and jurisdiction was reinvested in the District Court of Jefferson County. If the clerk at Galveston had failed to do his duty, the judge of the Jefferson County District Court could, upon a proper showing, have entered an order requiring the papers to be forwarded. It may be that the transcript is the best evidence of such facts, but when proof was made by oral testimony, without objection, the court did not err in overruling the plea. And especially is this true in this case where it is shown that all necessary orders were made and steps taken to give jurisdiction to Jefferson County in accordance with an agreement made by counsel for defendant and the State, and in conformity to this agreement defendant had entered into a new bond, and had never questioned the matter for nearly two years, and not then until after a motion for continuance had been filed and overruled.

2. No bill of exceptions was reserved to the action of the court in overruling the motion for a continuance on account of the absence of counsel and the witnesses named in the application; therefore, we can not consider this ground in the motion for a new trial.

3. The court did not err in permitting the district attorney to substitute the indictment. It appears that the indictment was returned and received by the district clerk when the venue was changed back to Jefferson County, and lost thereafter. The case was then pending in the county where the indictment was found, and it could be substituted as any other lost indictment.

4. Appellant complains of the action of the court in requiring him to exhaust a challenge on the juror W. F. Wilson, stating that

by reason of having to exhaust a challenge on said juror, he was compelled to accept J. F. Johnson on the jury. In the bill no reason is given why the juror Johnson was objectionable to defendant, and no injury to him is shown by reason of him being on the jury. It is not claimed that the juryman accepted had any previously formed opinion or had any bias or prejudice against defendant. As shown by this bill there was no error of which defendant can complain.

5. The fourth ground of appellant's motion reads as follows: "Because the court erred in not giving to the jury special charges Nos. 1, 2 and 3, as requested by defendant, and filed in this cause, which are hereto attached and made a part hereof." No reason is assigned in the motion for new trial why said special charges should have been given, but it is only stated that the court erred in not giving them. In Quintana v. State, 29 Texas Crim. App., 401, this court holds, speaking through Judge Davidson: "There is a bill of exceptions reserved to the charge as an entirety, in which the only objection urged is thus stated: 'Because the same did not instruct the jury fully upon the law governing in this case under the facts proved.' The court's qualification of this bill of exceptions is thus stated: 'When the charge was read to the jury, the defendant's attorney excepted to the charge without assigning any reason.' We are not called upon to consider this exception. 'Bills of exception when too indefinite to point out distinctly the matter complained of as error will not bring such matter properly before the court for review.' Smith v. State, 22 Texas Court Appeals, 316; Williams v. State, id., 497. The primary object or purpose of a bill of exceptions reserved to a charge of the court is to call the attention of the trial judge to the particular matter complained of, so that he may be afforded an opportunity to correct any error he may have fallen into, to the end that the rights of the defendant may not be prejudiced. A general exception does not accomplish this. Another reason why the bill of exceptions should point out specifically the error complained of is to enable this court to ascertain what error was committed without having to examine other portions of the record. This is not done by a general exception. The bill must be so certain and full in its statements that the errors complained of are made to appear by the allegations of the bill itself. Willson Crim. Stats., sec. 2368. Tested by these rules the bill is insufficient to bring before this court any supposed errors in the charge which are calculated to injure the rights of the defendant. Smith v. State, 22 Texas Crim. App., 316; Mace v. State, 9 Texas Crim. App., 110; Smith v. State, 15 Texas Crim. App., 139; Lewis v. State, 18 Texas Crim. App., 401." In the absence of a bill of exceptions, this court has held that when the matter is complained of for the first time in a motion for a new trial, the reasons must be stated as specifically as is required in a bill of exceptions.

6. In the fifth ground complaint is made that the court erred in

not granting a postponement of the cause as is shown in bill of exceptions No. 3, and by referring to this bill we find that the grounds are the same as those discussed in paragraph one of this opinion, that the court did not have jurisdiction of this case. We have held that the court had jurisdiction; consequently this presents no error.

7. Defendant complains that the court erred in not striking from the record the testimony of the witness Mrs. Hattie Remington as to the intentions of the deceased in going to Beaumont, the letter written by the firm of O'Brien, John & O'Brien and the conversation of Mrs. Rowley with deceased. There was no exception reserved to this testimony being admitted, no motion made to strike it out, but the record shows the testimony was admitted without objection. The defendant at the close of the case asked a special charge that the jury be instructed not to consider these matters; in the special charge no reasons are assigned why the testimony was not germane, why it was not admissible in evidence, and being admitted without objection, and no reasons given in the special charge why the testimony was not admissible, we can not search the entire record to judge whether or not it was properly admitted. If appellant did not think the testimony admissible, he should have objected at the time it was offered and reserved his bill; if at the time of its introduction he had doubts, but at the close of the testimony he believed the testimony inadmissible, he should have filed a motion to exclude it, and, either in a bill objecting to it, or in the motion to strike it out, he should have stated the testimony and the reason why it should not have been admitted. As presented here, the matter is in such condition we can not pass on the question of its admissibility and not being excepted to and no motion made to strike it out, we hold that the special charge is insufficient for us to review the matter, and comes too late.

8. The ground assigned that the court erred in permitting the jury to read newspapers is not verified by a bill of exceptions. In the absence of a bill of exceptions showing that they read newspapers, we can not presume that they did so, and if they did, it resulted in injury to defendant.

9. There is no bill of exceptions reserved to admitting the testimony by Mrs. Rowley, given on former trials. Mrs. Rowley was a witness for the defendant, and it may be that such testimony was admissible for the purpose of contradicting her. When no bill of exceptions was reserved we can not review the matter. The statement of facts shows this testimony was admitted without objection.

10. This disposes of all the grounds in the motion for a new trial except the third. It reads: "Because the court erred in so much of its main charge as set out and defined in full murder of the first degree and express malice, said charge tended to and did impress upon the jury the fact that in the opinion of the court the defendant

was guilty of murder in the first degree; whereas this defendant had been acquitted of that offense, and a charge on same was erroneous and prejudicial. And this defendant specially excepts to the 12th section of the court's charge; also to the 17th, 18th, 19th, 20th, 21st and 22d sections of the court's general charge, which are as follows:" but no reason is assigned in the motion why he objects to said paragraphs of the court's charge and no errors therein are pointed out or suggested.

Following the charge on murder in the first degree, we find the court instructed the jury: "In this case, however, the foregoing charge on murder in the first degree is given you only for the purpose of better enabling you to understand the essentials of murder in the second degree, *and for no other purpose.*"

This charge being given, it is impossible for the charge on murder in the first degree to have misled the jury, or caused them to think that the court believed defendant was guilty of murder in the first degree, for it in terms tells the jury they shall not consider it, except in so far as it will enable them to understand the charge on murder in the second degree. Then the verdict of the jury shows affirmatively that this charge did not impress them that defendant was guilty of murder in the first degree, for they found defendant guilty of murder in the second degree, and assessed his punishment at only five years —the lowest penalty that could be assessed for that crime.

That portion of the paragraph which says that the defendant specially excepts to paragraphs 12, 17, 18, 19, 20, 21 and 22 is too general to be considered. In the motion for a new trial the error in the charge must be specifically pointed out, is and has always been the rule of decision in this court. See Ryan v. The State, decided at this term of the court and authorities there cited.

11. The motion in arrest of judgment presents the question of jurisdiction of the court. This has been fully discussed herein, and the court did not err in overruling the motion.

12. Appellant, in an able brief, assigns many alleged errors not contained in the motion for a new trial. He takes the charge of the court, and assaults a number of paragraphs therein, but the criticisms have no basis in his grounds as alleged in his motion for a new trial. This court looks alone to the bills of exception and the motion for a new trial, and assignments of errors filed in this court, or contained in the brief, can not be considered by us. The matter must be complained of in the trial court, and as in the motion for new trial, no ground is assigned which presents error, the judgment is affirmed.

*Affirmed.*

[Rehearing denied January 15, 1912.—Reporter.]