## TOM BROWN v. THE STATE.

### No. 1712.    Decided June 5, 1912.

**1.—Theft of Hog—Sufficiency of the Evidence.**

Where upon trial of the theft of a hog the evidence sustained the conviction, although conflicting, the same will not be disturbed.

**2.—Same—Charge of Court—Date of Offense—Limitation.**

Where the indictment was found April 6, 1911, and charged the alleged theft on or about February 15, 1910, and the court charged the jury that if defendant at any time within five years next before the 6th day of April, 1911, committed the offense to find him guilty, etc., there was no error.

**3.—Same—Charge of Court—Limiting Testimony—Impeachment.**

Where, upon trial of the theft of a hog, the defendant while on the witness stand was required to answer the question whether he had not been indicted for theft of cattle and illegally marking a cow, and the court limited such testimony to purposes of impeaching the credibility of defendant as a witness, there was no error.

**4.—Same—Newly Discovered Evidence.**

Where there is nothing whatever in the record to show that the alleged evidence set out in the motion for new trial was newly discovered evidence under the law, there was no error in overruling the motion.

**5.—Same—Date of Offense—Sufficiency of the Evidence.**

Where, upon trial of. the theft of a hog, the defendant sought to show that the hog which he killed was killed some two years previous to the alleged theft and therefore was not the animal which he was alleged to have stolen, but the evidence showed that defendant killed the alleged stolen hog about the time charged in the indictment the conviction was sustained, and there was no error in the court's charge that if defendant committed the offense within the period of limitation to find him guilty.

Appeal from the District Court of Hardin. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction for the theft of a hog; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Jno. L. Little,* for appellant.—On the question of the insufficiency of the evidence: McCoy v. State, 3 Texas Crim. App., 399; Clemment v. State, 2 S. W. Rep., 379.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—The appellant was indicted, tried and convicted of hog theft and his punishment fixed at three years imprisonment in the penitentiary.

The appellant, in his motion for new trial and brief, claims that the verdict is contrary to the law and evidence and without evidence to support it. We have carefully gone over and considered the statement of facts. If the State's witnesses are to be believed, and evidently they were by the jury and trial judge, the evidence is ample and clear to sustain the conviction. If the jury had believed the appellant and his witnesses they should have acquitted him. Under such circumstances, the jury and the court below being by law made the judges of the credibility of the witnesses and the weight to be given to their testimony, this court can not disturb the verdict. It is unnecessary and would serve no useful purpose to give the testimony in this case.

Appellant complains of the charge of the court, as follows: "The court erred in his general charge to the jury wherein he charges: 'Now, if from the evidence, you are satisfied, beyond a reasonable doubt, that the defendant, Tom Brown, in the County of Hardin and State of Texas, at any time within five years next before the 6th day of April, 1911, which is the date of the filing of the indictment in this case, fraudulently took from the possession of the said Tom Cravey the hog mentioned in the indictment,' etc.

"Because said charge is misleading and is upon the weight of the evidence, 'the hog mentioned in the indictment' was not dead in the month of January, 1910, and the evidence shows that Tom Cravey had the hogs in the pen in January, 1910, and turned sixteen head out at that time and this indictment is for killing one of the sixteen." The indictment was found April 6, 1911. It charged the theft on or about February 15, 1910. The charge of the court above complained of is strictly in accordance with the evidence and the law and is not subject to the criticisms made against it, even if we could consider it at all. Berg v. State, 64 Texas Crim. Rep., 618, 142 S. W. Rep., 884, and Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878.

The next complaint of appellant is that while he was a witness in

his behalf he was required to answer questions by the State showing that theretofore he had been indicted for cattle theft and for illegally marking a cow. The court properly charged the jury that this testimony was introduced solely for the purpose of impeaching the credibility of the defendant as a witness, and could not be considered as criminative testimony in this case. No objection was made to this charge. The court properly permitted the State to ask and the defendant to answer the questions. Branch's Crim. Law, section 868.

The only other ground urged by appellant is that "the evidence shows that on the 15th day of February, 1911 (he means February 15, 1910), the date alleged in the indictment, the defendant was working at the saw mill and was not at home during the day. See exs. C. & E. Reference is here made to the exhibits hereto attached and made a part of this motion." It seems that to this motion are attached three affidavits, one showing that the books of a certain lumber company shows that one Will Floyd worked as a hand therein from February 1, 1910, to February 25, inclusive, except that he did not work on the 6th, 11th, 13th, 17th, 20th and 24th. The other two affidavits are to the effect that the books of a certain lumber company shows that Tom Brown worked for said company from the first to the 28th of February, 1910, except on the 6th, 13th, 17th, 20th, 27th and 28th, and only part of some other days during said month. There is nothing whatever in the record to show that any of this evidence was newly discovered evidence under the law and the court did not err in not granting a new trial on this ground. Gray v. State, 65 Texas Crim. Rep., 204, 144 S. W. Rep., 284.

The judgment will therefore be affirmed.

*Affirmed.*

ON REHEARING.

June 5, 1912.

PRENDERGAST, JUDGE.—Appellant earnestly insists, in his motion for rehearing, that the evidence in this case shows conclusively that the hog charged to have been stolen was in the possession of the alleged owner in January, 1910, and that the hog the State's witnesses testified appellant killed was killed in 1908, before the State's chief witness Will Floyd went to work at Voth, and hence, could not have been the hog that was killed by appellant on or about February 15, 1910. In other words, he claims that the evidence conclusively shows that appellant killed a hog in 1908, and did not kill one on or about February 15, 1910, and therefore the hog he killed in 1908 could not have been the hog of the alleged owner who was in possession thereof and his hog was alive in January, 1910. Of course, if the evidence so showed as claimed by appellant, then this conviction should not stand.

We have again carefully gone over the evidence in this case. The evidence satisfies even us, as detailed by this record, and we think

a preponderance of it shows that the hog of the alleged owner was stolen from him by appellant on or about February 15, 1910, and that neither that hog nor any other of the said alleged owner was stolen or killed by appellant in 1908, before said witness Floyd went to Voth in 1908.

The testimony of the State's witness, Will Floyd, after showing that he knew appellant and that appellant was charged with the theft of the hog of Mr. Cravey, the alleged owner, on or about February 15, 1910, said: "I saw him (appellant) on or about that time with a hog. At the time I was standing on A. D. McFarland's gallery; those on the gallery at the time was just me and McFarland and his family. Tom Brown was dragging a hog then and he was going up to his house, going that way, up to his house. I saw him after that at his house. I went to his house. The way I come to go to his house was he sent for me to clean a hog. The color of that hog was black; it was a sow about three years old, looked to be." Then the witness gives the mark of the hog, and continuing, said: "That was Tom Cravey's mark. I know Mr. Cravey's mark. I cleaned that hog. Tom Brown did not help me clean the hog; he didn't do anything but went off again, but I do not know what he went after as he did not tell me what he went after and he did not come back while I was there. I cleaned this hog right back of Tom Brown's house. That was on or about the 15th day of February, 1910." This is in full the substance of said witness' testimony on direct examination.

Then follows a long cross-examination of nearly six pages of type-written matter. The attempt in this cross-examination is made to show that this witness is mistaken as to the time of the killing of this hog, but that it was more than two years before the time alleged in the indictment and sworn to by him on his direct examination, and was before he went to work at Voth. Where Voth is with reference to Tom Brown's is not made to appear anywhere in this record. So far as the record shows and we know, it may have been within a stone's throw of Tom Brown's house. However, we presume that it must have been some town some miles off from the location of Tom Brown's. But whether that is true or not and while the witness is somewhat mixed as to dates on his cross-examination, in the main he shows that it was not in 1908 before he went to Voth that Tom Brown killed this hog which he dressed, but that it was after he came back from Voth and was on or about February 15, 1910.

The testimony of Primus McDonald, the State's next witness, corroborates Will Floyd amply and fully as to the time and the identity of the hog.

The next State's witness was Tom Cravey, the alleged owner of this stolen hog. By his testimony he shows that he knew the appellant and lived in about two miles and a half from him on February 15, 1910. That on or about that date he lost one hog, a large black sow about three years old. The description he gives of this hog, its size,

color, age and mark, corresponds fully - and substantially to the description of the hog described by said witness Floyd. He shows that in January, 1910, he had this hog with some fifteen others up, and turned them out on the range at that time; that he lost all of them. On cross-examination he shows that from the investigation he made at the time when he heard about the appellant having had Floyd to dress said hog for him, that he was satisfied that that was his hog, the three year old black sow as described in his mark, by the witness Floyd.

Appellant then, by his witness Heck Arline, showed that he came to Hardin County with said State's witness Floyd about June or July, 1907, and that Floyd then stayed with him about two or three months. From there he went to McFarland's and stayed at McFarland's some two to four months. Then he went to Voth and stayed at Voth about eighteen months or two years; that he came back from Voth about two years thereafter to McFarland's and had been living at McFarland's ever since. To take the testimony of this witness, it shows that he went from McFarland's about December, 1907, to Voth, and stayed at Voth, say full two years, thence back to McFarland's and that unquestionably put him back at McFarland's not later than December, 1909, and as he stayed there from that time on up to the time of the trial of this case, which occurred in September, 1911, he must have been at McFarland's in January and February, 1910, as he testified and claimed. This would show clearly and conclusively that he was at McFarland's in February, 1910, when this hog was stolen and was not at Voth.

The defendant's next witness, the said A. D. McFarland, with whom the said State's witness Floyd is shown to have stayed, testified for appellant that the black hog that was killed and dragged by his house when he and Will Floyd saw it, was in 1908, and not in 1910; but he could not be positive about dates and attempted to fix it by some trade he made and deed he got that year, but on cross-examination he states that the day before the trial he told the district attorney in the presence and hearing of several persons whose names were called to him "that that hog was drug by that house (his house) there at the time Will Floyd went up there and helped clean it this last February was a year ago, which was February, 1910, well, I believe I said something to you about that. Yes, I remember speaking that, I remember telling you that now." Then on redirect examination by the defendant this witness further said: "Now, with reference to this conversation in there and what I told Mr. Manry (the district attorney) and how come me to tell him those dates, well, Mr. Manry, is right about that; as I told you lawyers before, my remembrance is mighty short, I can't recollect nothing hardly, but when a thing is brought to my mind I can remember it, but I can't recollect any thing, my remembrance is awful short. Yes, he is right about what he said, after he spoke about

it he is right about it, but my remembrance is so short I can hardly remember."

Appellant's wife then testified for him and denied that Will Floyd had ever gone to his house and helped clean any hog. Then appellant himself testified denying the theft of this hog and that Will Floyd had ever at any time cleaned a hog for him or helped clean a hog, but he testified that on December 24, 1907, he sold said Floyd one-half of a hog. Even the appellant himself by his testimony shows that he had known said Floyd over four years; that when he first came there in the latter part of July four years before, he lived at Heck Arline's, his said witness, two or three months. From Heck's he went to Mc-Farland's and stayed two or three months, then went to Voth and stayed nearly two years; then came back from Voth to McFarland's. Clearly, by his own testimony, he puts this witness back at McFarland's in the latter part of the year 1909, and shows that he, said witness, was at McFarland's in February, 1910.

The State, in rebuttal, proved by said witness Floyd that he did not on December 24, 1907, or at any other time buy a half of a hog from appellant.

The testimony, in our opinion, is clearly against appellant's contention from any viewpoint. It is the general, if not the universal, practice and always approved by this court, for the court in his charge to tell the jury in effect that if they believe the offense was committed by the accused at any time within the period of limitation before the date of the filing of the indictment, to find the accused guilty. In other words, not to limit the time of the commission of the offense to the date or on or about the date charged in the indictment to have been committed and the court did not err in so charging in this case.

The motion for rehearing is overruled.

*Overruled.*