## Thomas Berry v. The State.

### No. 2567.　Decided October 22, 1913.

### Rehearing denied March 4, 1914.

#### 1.—Murder—Evidence—General Reputation.

Where, upon trial of murder, defendant testified that deceased was a quarrelsome, overbearing man and to prior difficulties deceased had, etc., there was no error in permitting the State to introduce evidence of the general reputation of deceased as a peaceable, law-abiding citizen.

#### 2.—Same—Jury and Jury Law—Practice on Appeal.

Where, upon appeal from a conviction of murder in the second degree the record showed that the lower court found that the affidavit attached to defendant's motion for new trial to the effect that one of the jurymen selected to try the cause could not read or write was untrue, and the evidence adduced on this hearing was not brought up in the record, this court can not review the matter, and it must be presumed that the court below acted on proper evidence.

#### 3.—Same—Charge of Court—General Objections.

Where the defendant's objections to the court's charge were of a general character and did not point out the error, if any therein, or any reason why the special charges, which the court refused to give, should have been given, the matter could not be reviewed on appeal.

#### 4.—Same—Assignment of Error—Practice on Appeal.

It is only fundamental errors that can be complained of for the first time in this court, and all other errors must be assigned in the motion for new trial or in bills of exception and called to the attention of the trial court, and it is too late to point them out in this court.

#### 5.—Same—Rule Stated—Assignment of Errors.

The Legislature has provided that no assignment of errors can be filed, but in the motion for a new trial each matter in which it is claimed that the trial court erred must be pointed out, and the Appellate Courts will not consider any other; this is the rule in all the courts. Following Byrd v. State, 69 Texas Crim. Rep., 35, 151 S. W. Rep., 1068, and other cases.

Appeal from the District Court of Henderson. Tried below before the Hon. John S. Prince.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Miller & Miller,* for appellant.

*C. E. Lanc,* Assistant Attorney-General, and *Earl Adams,* district attorney, and *W. R. Bishop,* for the State.—On question of disqualification of juror: Mays v. State, 37 S. W. Rep., 721; Lane v. State, 15 S. W. Rep., 827; McDaniel v. State, 74 S. W. Rep., 768; Cubine v. State, 73 S. W. Rep., 396; Sutton v. State, 20 S. W. Rep., 564; Leeper v. State, 14 S. W. Rep., 398.

On question of general reputation: Darnell v. State, 58 Texas Crim. Rep., 585, 126 S. W. Rep., 1127; Brown v. State, 52 Texas Crim. Rep.,

267, 106 S. W. Rep., 368; Kidwell v. State, 33 S. W. Rep., 342; Rhea v. State, 38 S. W. Rep., 1012; Warren v. Com., 35 S. W. Rep., 1028.

HARPER, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at ten years confinement in the State penitentiary, from which judgment he prosecutes this appeal.

The facts would show that John McGahan was a tenant of appellant during the years 1911 and 1912. The first trouble of any character that arose between them was in the fall of 1911 over a dollar which appellant claimed McGahan had wrongfully appropriated to his own use. However, it appears that subsequent to this the relations between the two men became friendly, and were so at least during a part of the year, 1912. It appears there were some words and misunderstanding over the hauling of a bale of cotton, selling some cotton seed; over pecans that grew on the rented premises, and over cutting the corn stalks on a tract of land rented by McGahan during the year 1912, and this latter trouble culminated in the death of McGahan on the 13th day of November, 1912. This corn stalk land is variously estimated from four to ten acres in the testimony, and appellant had rented this land to his son, Thomas Berry, Jr., for the year 1913, and his son was anxious to cut the stalks on the land during the fall of 1912. Appellant insists in his testimony that deceased first gave his consent, but admits that he subsequently notified him and his son that they could not cut the stalks on this land; that he desired it for a pasture. Appellant and McGahan both went to see a justice of the peace in regard to their respective rights in the premises. It is clearly shown that prior to the time appellant's son sought to and did in fact cut a part of the corn stalks, appellant and his son knew that deceased, McGahan, objected to the cutting of the corn stalks, and they went to the ground with this knowledge, appellant saying he went along to reason the matter with McGahan. When appellant and his son arrived at the corn stalk land, deceased and three of his children were either at this point, or near it, preparatory to picking cotton immediately after dinner. Appellant insists that when he walked up and his son drove up with the stalk cutter, deceased was armed with an elm stick and his fourteen-year-old daughter with an oak club. This is denied by the children of the deceased who were present.

Appellant's contention as to the way the fatal difficulty arose is that as his son drove up the stalk cutter ran in a ditch, and he told his son, Thomas, to drive up; that deceased then approached him, and after some words, struck him with the elm stick, and he then struck deceased with an iron poker he had in his hand, when deceased again struck at him, and in stepping out of the way he fell, when deceased got over him, and was in the act of striking him with the elm stick when a shot was fired; then a second shot was fired, and he caught deceased around the neck with the iron poker and pulled him down. That this constituted in full his acts; that he did not know his son, Thomas, was armed, and did not know he intended to shoot deceased; that his mission to the

corn stalk land was a peaceable one, and he did no act which would or could render him guilty of the death of deceased.

The State's case is that as appellant and his son came up to the corn stalk land, McGahan told them not to go on the corn stalk land, when appellant said to his son, "Go right on," when deceased, McGahan, walked right up to appellant and said, "Go right on, heh," when appellant struck deceased, and deceased reached down and picked up a root and hit appellant on the arm, when appellant again struck deceased, when deceased struck at appellant, and as he did so appellant stepped back and fell, when Thomas Berry, Jr., shot at deceased, deceased remarking, "Look out, look out," when Thomas Berry, Jr., remarked, "H——l, you are the one to look out," and fired again, when deceased fell to his knees, when appellant caught deceased around the neck with the iron poker, pulled deceased down and beat him; Thomas Berry, Jr., in the meantime proceeding to cut the corn stalks. The State's witnesses say that as Mr. Bass came up appellant remarked, "Well, we killed him just as we told you we would." Appellant and Mr. Bass deny that this remark was made, or that appellant beat deceased after Thomas Berry, Jr., had shot him. However, the testimony of Dr. Brewer as to the wounds found on the body would tend strongly to support the testimony of the State that appellant did beat deceased after Thomas Berry, Jr., had shot him.

The only bill of exceptions in the record relating to the admissibility and rejection of testimony is that the court erred in admitting testimony as to the general reputation of deceased as a peaceable, law-abiding citizen. It might be said here that the testimony would show that both appellant and deceased bore the reputation of being peaceable, law-abiding citizens. That appellant had the right to place his reputation in issue there can be no question, the only question being, was the testimony offered by appellant such as authorized the State to prove the reputation of deceased. The appellant proved by one Holsenbeck the following facts: "Well, he said that he wasn't going to let Mr. Berry cut those stalks; that if Mr. Berry came down there to cut those stalks he would break his damn neck, and that he would die before he would let Mr. Berry cut those stalks. That was about two weeks before the killing occurred." This threat was never communicated to appellant prior to the fatal encounter, but it was admitted on the issue as to who in fact committed the first overt act. Again, the record discloses that while Effie McGahan was testifying on cross-examination the following occurred. The appellant asked Effie McGahan: "And Mr. Ivey and your father fell out and you all then moved to Mr. Berry's, did you or not? State: Wait a minute, we object to that as being immaterial whether he fell out or not with some other party; that wouldn't justify Mr. Berry in taking the life of Mr. McGahan. Court: At what place was that? State: At another place and another time, two years before the killing. Court: Well, I will sustain the objection to what occurred two years before between another party. Defendant: Just a minute,

your honor, that evidence goes first to the character of Mr. McGahan as to being a quarrelsome man, hard to get along with; and second, it will go to show the fact that Mr. Berry was kind-hearted and a good man." The court then admitted the testimony. Appellant testified to deceased being a quarrelsome, over-bearing man, to prior difficulties, and under such circumstances there was no error in permitting evidence of the general reputation of deceased. Of course, if appellant had not either directly or indirectly attacked the reputation of deceased, it would not.have been proper for the State to introduce such evidence. But when the defendant had raised that issue by the evidence adduced by him, then under all our decisions it was permissible for the State to introduce evidence to meet the proof of defendant, and show if it could that deceased was not a violent, quarrelsome and dangerous man, but was a peaceable, law-abiding citizen. This is the only bill of exceptions presented in the record in regard to the admissibility of the testimony adduced on the trial.

In his motion for a new trial appellant contends that Geo. R. Archer, one of the special venire drawn and one of the jurymen selected to try this cause, could not read nor write, and attaches to the motion as an exhibit the affidavit of Ben Hellums, who swears that Archer can neither read nor write. In overruling the motion for a new trial the court states: "On this day came on to be heard the motion of the defendant, Thomas Berry, Sr., for a new trial in the above entitled and numbered cause, and it appearing to the court that the juror, George Archer, can read and write and that he so stated under oath when he was chosen as a juror, and the court finds that the affidavit attached to said motion is untrue." The evidence adduced on this hearing is not brought before us to review, consequently we can not and will not hold that the judgment of the court is without evidence to support the finding. If appellant desired us to review the judgment of the trial court in this respect, he should have presented us the evidence heard on the motion for a new trial in a proper bill of exceptions.

The first ground of appellant's motion for a new trial reads as follows: "Because the court erred in refusing to give to the jury in charge the defendant's special charge No. 1, which is as follows:" (Then follows a copy of the charge requested.) That is all that is in the motion for a new trial. Following this is a complaint of the failure of the court to give each of the special charges requested by appellant.. After thus complaining of the failure of the court to give the special charge requested, appellant next complains of the charge of the court in the following language: "Because the court erred in paragraph 1 of his main charge to the jury, which is as follows, towit:" The appellant copies that portion of the charge relating to murder in the first degree; and in the next ground, in the same general way, complains of the action of the court as to the charge of the court on murder in the second degree and manslaughter, and the other paragraphs of the charge. In no instance does appellant seek to point out the error in the charge of the

court, if error there be, nor does he assign any reason why either of the special charges should have been given. In a brief filed in this court by the able counsel for appellant, counsel do seek to point out errors in the charge as given and reasons why the special charges requested should have been given in charge to the jury. And we are frank to say that if the questions had been raised in the trial court, some of them would present questions of difficulty, if not error. But why is a motion for a new trial in the trial court a requisite to an appeal in this court? It is to point out to the trial court the errors, if errors there be, that the trial court may correct same by granting a new trial. It is only fundamental errors that can be complained of for the first time in this court, and all other errors must be assigned in the motion for a new trial or in bills of exception and called to the attention of the trial court. If not thus assigned, it is too late to point them out in this court. Formerly it was permissible in civil cases in the motion for new trial to assign "that the court erred in the following paragraph of his charge," setting out the paragraph, and then in the assignment of errors, filed after the adjournment of court, to specifically point out the errors in the paragraph, but this was never the rule in this court, and no such practice prevails any longer in the Supreme Court, and the Court of Civil Appeals, but the error, if error there be, must be pointed out in the motion for new trial. The Legislature has provided that no assignment of errors can be filed, but in the motion for a new trial each matter in which it is claimed the trial court erred must be pointed out in the motion for a new trial, and the different courts on appeal will consider only such questions as are thus pointed out in the motion for a new trial. In the case of Byrd v. State, 69 Texas Crim. Rep., 35, we had occasion to review the statutes and decisions of this State, and we then held that in the motion for a new trial the error relied on for a new trial must be specifically pointed out, and since the rendition of that opinion the Supreme Court, the Court of Civil Appeals, and the Legislature have prescribed that this is a correct rule of law, and the uniform holding in all our appellate courts is now the error must be pointed out in the motion for a new trial, or the assignment will not be considered on appeal. In this case, in the motion for a new trial, it is not attempted to point out any error in the charge of the court, nor reason assigned why either of the special charges requested should have been given. Of course, if what is termed fundamental error, is in the record, it may be pointed out at any time, but no such error is apparent in this record. It has always been the rule in this court that the error, if error there be, must be pointed out to the trial judge in the motion for a new trial, or such assignment will not be considered by this court. See Byrd v. State, 69 Texas Crim. Rep., 35, 151 S. W. Rep., 1068; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884; Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878, and cases there cited. In the motion for a new trial no error is pointed out in the charge of the court, and no reason assigned why any of the special

·charges requested should have been given, nor error pointed out because of the failure of the court to give same, consequently such assignments are too general to be considered by this court.

There being no error pointed out in the motion for a new trial, the judgment is affirmed.

*Affirmed.*