### SAM HILL v. THE STATE.

No. 3396.   Decided January 27, 1915.

Rehearing denied February 24, 1915.

**1.—Slander of Female—Sufficiency of the Evidence—No Variance.**

Where, upon trial of slandering a female, the testimony of the State's witness showed that on direct examination, he stated positively that defendant used to him the identical language charged in the indictment, but on cross-examination, was not as positive about it, the question was one for the jury, and there was no reversible error.

**2.—Same—Requested Charges—Practice on Appeal.**

Where no reason was given why the refused requested charges should have been given, there was no reversible error.   Following Byrd v. State, 69 Texas Crim. Rep., 35, and other cases.

**3.—Same—Language Used—No Variance.**

In prosecutions for slander of a female, it is only necessary to allege the substance of what was said which is charged to be slander, and to prove the same substantially.   Following Hasley v. State, 57 Texas Crim. Rep., 400, and other cases.

**4.—Same—Identical Language—Requested Charge.**

Upon trial of slander of a female, there was no error in refusing a requested charge that the State was required to prove the identical language alleged in the indictment, the court charging the jury that the slanderous statements must be substantially proved.

**·5.—Same—Leading Questions.**

Where the court permitted the State to ask the witness whether or not the defendant had stated to him about the alleged female what was alleged in the indictment, there was no error.   Following Carter v. State, 59 Texas Crim. Rep., 73.

**6.—Same—Evidence—General Reputation.**

Where the State's witnesses on direct examination testified that the general reputation of the alleged female was good, and on cross-examination testified that this was their individual opinion, it would not justify the exclusion of such testimony, but would only go to the weight of it.

Appeal from the County Court of Colorado.   Tried below before the Hon. J. J. Mansfield.

Appeal from a conviction of slandering a female; penalty, a fine of $100.

The opinion states the case.

*P. P. Putney* and *Emanuel Ross,* for appellant.—On question of slanderous language used by defendant:   Barnett v. State, 33 S. W. Rep., 340; Woods v. State, 58 Texas Crim. Rep., 103, 124 S. W. Rep., 918; Hasley v. State, 57 Texas Crim. Rep., 400, 123 S. W. Rep., 596; Roberts v. State, 51 Texas Crim. Rep., 27, 100 S. W. Rep., 150.

On question of proof of general reputation:   Tyson v. State, 14 Texas Crim. App., 388; Cox v. State, 8 id., 254; Saddler v. State, 20 id., 195.

On question of insufficiency of the evidence:   White's Ann. Code

Crim. Pro., art. 817, subdiv. 9; Jessup v. State, 44 Texas Crim. Rep., 83; Price v. State, 36 id., 143; Newberry v. State, 32 id., 145.

C. E. Lane, Assistant Attorney General, for the State.—On question of insufficiency of bills of exception: Berry v. State, 73 Texas Crim. Rep., 203, 163 S. W. Rep., 964, and cases stated in opinion.

PRENDERGAST, Presiding Judge.—Appellant was convicted of slander and assessed a fine of $100.

The indictment avers that on or about August 15, 1914, in said State and county appellant "did then and there orally, falsely, maliciously, and wantonly impute to a female in this State, towit, Nancy Hemphill, a want of chastity, towit, the said Sam Hill, did then and there, in the presence and hearing of I. L. Terrell, and divers other persons, falsely, maliciously, and wantonly say of and concerning the said Nancy Hemphill, that during the time that she boarded with Jim McJimsey, that she had a man to stay with her every night, meaning that the said Nancy Hemphill, a teacher in the public schools of Colorado County, State of Texas, and while boarding with Jim McJimsey, following her vocation, lived with and had carnal and adulterous intercourse with men other than her husband."

The uncontradicted testimony showed that said Nancy Hemphill was a married woman and a negro school teacher in Colorado County, Texas; that her home was at Columbus, where she was born and lived all of her life; that she had taught school in said county for nine years,— the last seven terms before the fall of 1914, at Walker's Chappell in said county; that said Terrell was one of the trustees for that school, and in the summer of 1914 sent for Nancy, and after talking to her he practically promised her the school for the succeeding term; that soon after this appellant came to see him about the employment of a teacher for said school and opposed the employment of Nancy, and in the conversation, said Terrell testified, appellant told him that she was a bad woman, of an immoral character while she lived at Columbus, and "that during the time she boarded with Jim McJimsey that she had a man to stay with her every night"; that after this conversation Nancy came to see him again about the school and he told her that defendant had told him that she was a woman of bad reputation and he couldn't give her the school, and he did not give her the school, but the trustees employed another teacher. On cross-examination Terrell testified: "During my conversation with the defendant in which he told me that Nancy Hemphill stayed with a man while she boarded with Jim McJimsey, I am not positive as to what he said about the time that man stayed with her; he might have said every night; three or four times a week, however, he conveyed to my mind the impression that she had a man to stay with her frequently." And he further said that he would not say positively that defendant said to him that she had a man to stay with her "every night."

Taking the effect of the testimony of this witness it shows that on

direct examination he stated positively that defendant used to him the identical language charged in the indictment, but on cross-examination he was not so positive about it, and in fact said he could not be positive. Taking it as a whole it was a question for the jury.

Nancy Hemphill, among other things, testified that she was 45 years old, had been married since she was 20 years old and had three children, boys, about grown; that she never had a man to sleep with her other than her husband while boarding with Jim McJimsey, or at any other time during her whole life.

Jim McJimsey and his wife both swore that no man other than her husband slept with Nancy while she boarded at their house.

Betsy Johnson testified for appellant that said Nancy boarded with her a while, while she was teaching school at said Walker's Chappell; that she knew her general reputation in that community for virtue and chastity and it was bad; that she and Nancy had a falling out before the term closed and Nancy quit boarding at her house. Nancy testified that she quit boarding at Betsy Johnson's because she and Cornelia Clayton, who also boarded there and was her assistant teacher, could not get along together; that she boarded there five and a half months just before she boarded with McJimsey.

Appellant testified that he lived near Walker's Chappell school, was a patron thereof, having grandchildren attending the school, and felt an interest therein, and its management; that he heard certain reports concerning Nancy's character and went to Mr. Terrell and told him what he had heard about her. He said he did not remember making statements to Mr. Terrell that are charged against him in the indictment, and he did not know whether they were true or not; that he simply repeated what he had heard; that he was looking after the interest of the school and had no idea or purpose of injuring Nancy. Nancy had testified that she had never had any ill-will against appellant but that he had been meddling with her and her school for three years and had told her that he was going to get even with her, "And he has done it."

Appellant introduced several witnesses who testified to his good reputation as a law-abiding, peaceable man and for truth and veracity. Each of these witnesses, likewise, on cross-examination, testified that they knew the general reputation of said Terrell for truth and veracity and that it was good. He also had Cornelia Clayton, Nancy's assistant teacher at said school during 1913-14, testify that she knew Nancy's reputation at both Walker's Chappell and at Columbus for virtue and chastity and that it was bad. On cross-examination she said she was not on good terms with Nancy.

In rebuttal the State introduced Lawrence Foley, Ellek Robertson, Jim Henry Putney, Thomas Alexander, Albert Sanford, Ace Garner, and Ellek Cole, who each, in substance, testified that they had known said Nancy for many years at Columbus, where she lived, and that they knew her general reputation there for virtue and chastity, and it was good.

Lou Owens, for the State, testified, on direct examination: "I live

near Walker's Chappell school. I know Nancy Hemphill; I know her general reputation in the community of Walker's Chappell for virtue and chastity, and that reputation is good." On cross-examination: "That is my own individual opinion." The State also had Will Kelly, Aaron Brown, and James Amos each to testify precisely, in substance, the same as said Lou Owens. The evidence was amply sufficient to sustain the conviction.

The court gave a correct charge and applicable to the law and testimony. Appellant has made no objections thereto.

After the court had read his charge to the jury appellant requested several special charges. The court gave some of these and refused others. In neither of the charges requested, which were refused, is any reason whatever given why such special charge should have been given. Neither is any reason whatever given in the bills of exceptions or in the motion for new trial complaining of the refusal to give them. In the bill and motion for new trial it is simply stated that the appellant requested the charges, quoting them, and that the court refused to give them. This would not present the matter in such way as to authorize or require this court to review the court's refusal to give the charge, even in a felony case. Byrd v. State, 69 Texas Crim. Rep., 35, 151 S. W. Rep., 1068; Berry v. State, 73 Texas Crim. Rep., 203, 163 S. W. Rep., 964; Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884. It is needless to cite the many other cases.

All the authorities hold that it is only necessary to allege the substance of what was said which is charged to be slander and also that it is only necessary to prove substantially what is alleged and what was said. Frisby v. State, 26 Texas Crim. App., 180; Conlee v. State, 14 Texas Crim. App., 222; Riddle v. State, 30 Texas Crim. App., 425; Rogers v. State, 30 Texas Crim. App., 462; Berry v. State, 27 Texas Crim. App., 483; Humbard v. State, 21 Texas Crim. App., 200; Hasley v. State, 57 Texas Crim. Rep., 400. So that appellant's special charges to the effect that the State had to prove the *identical* language alleged, or acquit, should not have been given. Besides, the court gave his special charges to the effect that the jury must find from the evidence that the slanderous statements substantially as alleged were proven. And it would have been improper, as the court gave his special charges on this subject, to have charged the State had to prove the identical language.

The court did not err in refusing appellant's special charges which were refused, even if the refusal to give them had been raised in such a way that we could consider them.

A leading question is one which may be answered in the affirmative or negative *and* suggests the desired answer in a matter material to the issue. So says Mr. Branch in section 334 of his Criminal Law, citing authorities. Again, as said by him, permitting a leading question improperly will not be reversible error in the absence of a showing of prejudice thereby, citing several cases. Clearly appellant's bill com-

plaining in substance that the court permitted the State to ask the witness Terrell "whether or not" the appellant had stated to him about Nancy what was alleged in the indictment, shows no reversible error. Carter v. State, 59 Texas Crim. Rep., 73. Neither did the court err in refusing to strike out the said evidence of the witness Lou Owens, Will Kelley, Aaron Brown and James Amos as detailed above. In direct examination they each swore positively they knew Nancy's general reputation in the particular inquired about and that it was good. In cross-examination they showed that it was also their individual opinion. Even if the cross-examination had weakened their testimony on this point, it would not justify the exclusion of the testimony, but would go to the weight of it to be considered by the jury.

There being no reversible error presented the judgment will be affirmed.

*Affirmed.*

[Rehearing denied February 24, 1915.—Reporter.]

