# JANUARY, 1910.

## C. Q. DAVIS v. THE STATE.

### No. 123. Decided December 15, 1909.

### Rehearing denied January 12, 1910.

**1.—Murder—Charge of Court—Murder in Second Degree—Malice.**

Where, upon trial for murder, the court in his charge changed that malice must exist in all cases of murder, and that implied malice was inferred from an unlawful killing, etc., and then, applying the law to the facts, instructed the jury to find the defendant guilty of murder in the second degree in the absence of adequate cause or self-defense, there was no error, construing the charge as a whole. Following Puryear v. State, 56 Texas Crim. Rep., 231.

**2.—Same—Charge of Court—Manslaughter—Insulting Words.**

Where, upon trial for murder, the evidence showed that the deceased, just before the killing, used very abusive language towards the defendant, and the court, in his charge on manslaughter, charged the jury that insulting words, etc., were not deemed adequate cause, but further instructed the jury that any condition or circumstance which is capable of creating, etc., sudden passion, etc., rendering the mind incapable of cool reflection, etc., and also that, when no one of several causes arousing passion, etc., might constitute adequate cause, all might be combined and be sufficient, there was no error.

**3.—Same—Argument of Counsel—Opinion.**

Where, upon trial for murder, State's counsel stated their opinion as to their view of the case, and what ought to be done with defendant, while not proper practice, yet when no special charge was requested to disregard this matter, there was no reversible error.

**4.—Same—Practice in District Court—Resting Case.**

Where, upon trial for murder, the defense complained of surprise at the action of the State in resting its case so suddenly as not to give time to consult the defendant's witnesses, etc., but it was shown that the court granted ample time to the defense to consult his witnesses, and that there was really no surprise on this account, there was no error.

**5.—Same—Eyewitnesses—Practice in District Court.**

On trial for murder, where defendant, in his motion for a new trial, complained of the action of the court in refusing to require the State to put on the stand all the eyewitnesses to the killing, there was no error in overruling the motion, as the State is not bound to place on the stand all eyewitnesses; besides, the matter was not properly verified by bill of exceptions.

Vol. LVII. Crim.—35.

**6.—Same—Bills of Exception—Practice on Appeal.**

Where, upon appeal from a conviction of murder, it appeared from the record that no bills of exception had been reserved to matters during the trial which can only be considered on appeal when presented by bills of exception, same could not be considered.

**7.—Same—Sufficiency of the Evidence.**

Where the defendant was convicted of murder in the second degree, and there was sufficient evidence to support the verdict, there was no error.

Appeal from the District Court of Callahan. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of murder in the second degree; penalty, sixteen years imprisonment in the penitentiary.

The opinion states the case.

*B. D. Shropshire* and *B. L. Russell* and *Otis Bowyer,* for appellant. —On question of insufficiency of the evidence: Walker v. State, 14 Texas Crim. App., 609; Mitchell v. State, 33 Texas Crim. Rep., 575; Tollett v. State, 44 Texas, 95; Burt v. State, 38 Texas Crim. Rep., 397. On question of court's failure to instruct on malice: O'Connell v. State, 18 Texas, 343; Hudson v. State, 40 Texas, 13; Brown v. State, 6 Texas Crim. App., 286; Smith v. State, 8 Texas Crim. App., 141; Berry v. State, 8 Texas Crim. App., 515; Rogers v. State, 32 Texas Crim. Rep., 447. On the question of the court's charge on manslaughter: Green v. State, 32 Texas Crim. Rep., 298; Tippett v. State, 37 Texas Crim. Rep., 186. On question of requiring State to place eyewitnesses on the stand: Hunnicutt v. State, 20 Texas Crim. App., 632; Phillips v. State, 22 Texas Crim. App., 139. On question of argument of counsel: Childers v. State, 30 Texas Crim. App., 160; Brown v. State, 55 Texas Crim. Rep., 572, 118 S. W. Rep., 139. On question of court's charge on murder in the second degree: Clark v. State, 51 Texas Crim. Rep., 519; Abbatta et al. v. State, 51 Texas Crim. Rep., 510. On question of court's charge on manslaughter: Holt v. State, 51 Texas Crim. Rep., 15.

*F. J. McCord,* Assistant Attorney-General, for the State.—Cited cases in opinion.

DAVIDSON, Presiding Judge.—This conviction was for murder in the second degree. The punishment was assessed at sixteen years imprisonment in the penitentiary. The deceased was named Arthur Clemer. A difficulty arose between the parties on Sunday morning in regard to rent due by Clemer and for which appellant seems to have been responsible as surety. There was apparently ill-feeling between the parties prior to this transaction. The deceased became abusive to appellant, using the vilest and most vulgar expressions in denunciation of him. The parties separated, each going to his home,

within a hundred yards of where the meeting occurred. Their places of residence were about a hundred feet apart. Appellant was keep-a hotel. Clemer had his little child with him at the time of the meeting above mentioned. After carrying the child home he went from there north of where the above meeting occurred to the place of the homicide. The railroad runs practically east and west through the little town of Putnam where this tragedy occurred. Appellant armed himself with a shotgun and went in the same direction. His testimony shows that he was enroute to the postoffice to mail several letters. He gave as a reason for carrying the gun that he had an understanding with a young man in the town that they would go hunting, and as a further reason that deceased had threatened him, he was then fearful of the execution of such threats and a renewal of the difficulty, and took the gun for the purpose of protecting himself. As appellant approached the place where deceased was, the deceased went into a restaurant and sought to obtain a gun. Failing in this, he went out upon the gallery which was spoken of as the sidewalk, took his stand near one of the gallery posts with one of his hands upon the post. Some of the witnesses say it was his left hand, others that it was his right hand. There is testimony from several of the witnesses to the effect that deceased's right hand was in or about his right hand hip pocket. Appellant was passing about ten steps distant from the deceased when deceased began cursing and applying to him very vulgar and opprobrious epithets, calling him a damned son-of-a-bitch and God damned son-of-a-bitch and using expressions, according to some of the witnesses, much more vulgar and obscene. He further remarked to appellant that he, appellant, was armed; that he deceased was unarmed, but that he, appellant, was a God-damned coward and didn't have nerve to shoot him. These epithets, expressions and statements were repeated as many as three or four times. Appellant testified in his own behalf to the language used by the deceased towards him, and movement of his hand to his right hip, at which juncture he fired. The first shot missed deceased, the second shot took effect in deceased's stomach a little to the right of the navel. Small shot were used, supposed to be No. 4's, or as some of the witnesses call them, duck shot. This is a sufficient statement of the evidence, without going into the details.

1. The court charged upon both degrees of murder, manslaughter and self-defense. Exception was reserved to the following subdivision of the court's charge, applying the law of murder in the second degree to the facts: "If you believe from the evidence beyond a reasonable doubt that defendant, C. Q. Davis . . . with a gun, and that the same was a deadly weapon, did shoot and thereby kill Arthur Clemer as charged in the indictment, and that such shooting, if any, was not done under the immediate influence of sudden passion, produced by an adequate cause (as the same is hereinafter explained to

you) · and was not in defense of himself against an unlawful attack, or what to the defendant might have reasonably appeared an unlawful attack, producing in his mind a reasonable expectation or fear of death or serious bodily injury, then you will find the defendant guilty of murder in the second degree, and assess his punishment," etc. The objection to this charge urged in the motion for new trial is: "That the court nowhere tells the jury that the killing must be upon malice aforethought, or upon implied malice aforethought as theretofore defined." We are of opinion that there is no substantial merit in this contention. The question involved here was discussed in the case of Puryear v. State, 56 Texas Crim. · Rep., 231, 118 S. W., 1043. In a previous portion of the charge the court in this case gave a full and fair definition of malice as applicable to both degrees of murder. The following language was used in the Puryear case, supra: "As to the other criticisms of this portion of the charge, it is not to be denied that the charge is not as full or as accurately expressed as is always desirable; but we believe, tested in the light of the entire charge, or considered in fairness and carefully analyzed within itself, the charge complained of is not so clearly erroneous as to constitute reversible error. We have frequently said, and it can not be too often repeated, that in testing the sufficiency of a charge of the court, as, indeed, other instruments, the whole instrument and charge must and should be considered together." Then follows a quotation in the case supra of the definitions of malice and other portions of the charge given in that case bearing on this question. Then the court said: "There is no complaint in the motion that murder in the second degree was not properly defined. The jury were in terms told that in order to constitute murder in the second degree, malice must exist, and, further, that implied malice was inferred, or such as the law imputes to the act and fact of an unlawful killing. Then follows the language complained of. It is certain, if one kills another intentionally, under circumstances not amounting to murder in the first degree, or such as would reduce the grade of offense to manslaughter, and same is not in self-defense, it is unlawful. It is equally certain that under such circumstances the law would impute malice to appellant, and that the killing would be murder in the second degree. It is always unlawful for one person to intentionally kill another, unless the act is in self-defense or under such circumstances, as in case of legal execution, that the act would be justified in law; and in a case like the one at bar, where murder in the second degree is well and fully defined, so well, indeed, that the definition escapes criticism or complaint, it is not believed that the mere omission in a particular paragraph to require the killing to be unlawful, or upon malice would vitiate what would be otherwise a proper charge, where the facts required to be found, both as a matter of law and as a matter of fact, would make the killing

unlawful and stamp it inevitably as of the grade of murder in the second degree." Under the decision in the Puryear case from which this quotation is made, we are of opinion that tested by the rules laid down there, the charge was sufficient in this case. In fact this case, on the charge, is very similar, almost exactly like that in the Puryear case, and the quotation from that opinion may well apply to the question here suggested.

2. The court's charge upon the law of manslaughter is also criticised. At least that portion which reads as follows: "Insulting words or gestures, or an ordinary assault and battery, so slight as to show no intention to inflict pain or injury, are not deemed adequate cause." Exception was reserved to this charge because it was not applicable to the peculiar facts in evidence and contradicts and destroys the effect of the clause of the court's charge which immediately follows it. That charge is in the following language: "Any condition or circumstance which is capable of creating and does create sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not, is deemed adequate cause. And where there are several causes to arouse passion, although no one of them alone might constitute adequate cause, it is for you to determine whether or not all such causes combined might be sufficient to do so." There is no complaint of the latter part of the charge quoted, but the contention is that the first portion of the charge quoted is contradictory of the second and not applicable to the facts of the case. We are of opinion there is no substantial merit in this contention. The charge criticised is practically a copy of the statute and is the law applicable to all insulting words or gestures, except where the insulting conduct, words or gestures are towards or concerning a female relative. The insulting words used by the deceased, while of a most obscene character, were directed at appellant and not at his female relatives. Simmons v. State, 23 Texas Crim. App., 653; Levy v. State, 28 Texas Crim. App., 203. We are of opinion this charge did not mislead the jury. It was the law of the case so far as the insulting words were concerned as applied by deceased to appellant. Those words could not of themselves reduce an otherwise unlawful killing to the grade of manslaughter.

3. Two bills of exception were reserved to the language of prosecuting attorneys. The language is not of sufficient gravity, we think, to require a reversal of the judgment. These remarks were in substance the opinion of said attorneys, as to their view of the case, or what ought to be done with appellant. One of the attorneys said he did not believe that the jury would find appellant not guilty because the people of that county were law abiding people and believed in enforcing the law. The other said that the killing was deliberate, preconceived and a cold-blooded murder, and in passing on the mat-

ter the jury had before them a deliberate, cold-blooded murder with which to deal. Opinions of attorneys in matters of this sort should not be indulged and such conduct has been reprobated by this court in various decisions, but usually such arguments or statements have not been regarded as of sufficient importance to reverse the judgment, and it will be noticed that a special charge was not asked in regard to the matter. As presented we are of opinion there is not sufficient merit to require or authorize a reversal of the judgment in these contentions.

4. Another bill of exceptions recites that when the State had rested its case, appellant's counsel stated to the court that they were taken by surprise at the action of the State in resting its case so suddenly, and requested the court to grant them five minutes time within which to consult with their witnesses and with each other before offering testimony on behalf of defendant. The court signs this bill with the statement and explanation that shortly before the State rested the district attorney stated that the State was about ready to rest its case, and asked for about ten minutes in which to consult stating that the State would put on only one more witness, whose evidence would be short, and then the State would rest. Time was granted as requested and defendant was thus put on notice that the State would shortly rest its case, and the defendant's counsel had this time for consultation. The State did rest its case as indicated, and then defendant's counsel asked that they be given time to consult and arrange their testimony, and the court ruled that they had already had sufficient time and that they must proceed. Appellant then called for a female witness, who, it transpired, was at a boarding house, and the court sent for her, and waited for her appearance, and after sending for this witness, seventeen minutes elapsed before she arrived, during all of which time defendant's counsel had ample time to consult, if they had so desired; and with the above explanation the court approves the bill. As the matter is presented we are of opinion there is no special merit shown. The appellant had the time allowed by the court to the State in which to consult before "resting" the State's case, and in addition they had seventeen minutes while waiting for the appearance of the female witness mentioned in the court's explanation. Inasmuch as the appellant had only asked for five minutes, under the facts stated, he could have availed himself of the twenty-two minutes.

5. One of the grounds of the motion for new trial complained of the court's action in refusing to require the State to put on all the eyewitnesses to the actual killing. It is further stated that the prosecution had only produced two such eyewitnesses before the jury. It is also stated that there were many other witnesses to the killing. This is not verified by bill of exceptions and it might be answered that this is sufficient to meet this ground of the motion, but in any

event there was no merit in this contention.    Mayes v. State; 33 Texas Crim. Rep., 33; Reyons v. State, 33 Texas Crim. Rep., 143; Martinez v. State, 58 S. W. Rep., 1018; Jackson v. State, 24 S. W. Rep., 896; Blair v. State, 60 S. W. Rep., 879; McCandless v. State, 42 Texas Crim. Rep., 655, 62 S. W. Rep., 745; State v. David, 131 Mo., 380; Kidwell v. State, 35 Texas Crim. Rep., 264; Darter v. State, 39 Texas Crim. Rep., 40; Williford v. State, 36 Texas Crim. Rep., 414; Trotter v. State, 37 Texas Crim. Rep., 468; State v. Barrett, 33 Oregon, 194; Ross v. State, 8 Wyoming, 351; McGrew v. State, 49 S. W., 226.    There are quite a number of other cases that might be cited, but we think these are sufficient to show that the rule is well established, that the State is not bound to place on the stand all eyewitnesses.

There are some other questions stated in the motion for new trial, but they are not verified by bills of exception, and are such matters as can only be considered when presented by bills of exceptions, except some minor criticisms of the charge of the court.    In these there is no merit and we deem it unnecessary to discuss them.

The evidence, we think, is sufficient to justify the jury in arriving at their verdict.    The judgment is affirmed.

*Affirmed.*