BOYD MULDREW V. THE STATE.

No. 2831.   Decided April 1, 1914.

Rehearing denied April 29, 1914.

**1.—Murder—Habeas Corpus—Setting Case for Trial—Practice.**

Where the District Court had set defendant's case for trial and ordered a special venire who were in attendance of court, and the application for writ of habeas corpus was not made until the morning of the day for which the trial was set, and no sufficient reason was shown why defendant had not applied for a writ of habeas corpus sooner, as there was ample time to have done so, there was no error in denying the writ at that time and to proceed with the trial and directing that the application be heard later. Distinguishing Streight v. State, 62 Texas Crim. Rep., 453.

**2.—Same—Suspended Sentence—Practice—Statutes Construed.**

Where, upon trial of murder, sometime the next day after the case had gone to trial, but before the indictment was read and defendant had entered his plea of not guilty, he filed a sworn plea seeking to have his sentence suspended in the event he was convicted of manslaughter, the same was clearly filed too late, and the court was not required to submit that plea. Following Roberts v. State, 71 Texas Crim. Rep., 77, and other cases.

**3.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction for manslaughter, the evidence, although conflicting, was sufficient to sustain the conviction, there was no error on that ground.

**4.—Same—Evidence—Conduct of Defendant.**

Upon trial of murder, there was no error in admitting in evidence the acts and conduct of defendant which led up to the difficulty.

**5.—Same—Requested Charges—Practice on Appeal.**

In the absence of the record pointing out the errors for refusing requested charges, the same can not be considered on appeal. Following Byrd v. State, 69 Texas Crim. Rep., 35, and other cases.

**6.—Same—Charge as a Whole—Manslaughter.**

Where, upon trial of murder and a conviction of manslaughter, the charge of the court, when considered as a whole, did not instruct the jury to convict defendant of manslaughter. regardless of whether or not he intended to kill deceased or whether he acted in self-defense, but applied the law to the facts in a proper way, and in addition thereto, charged the reasonable doubt between murder in each degree and manslaughter and also between manslaughter and aggravated assault and told the jury that if they had a reasonable doubt as to whether the offense, if any, was aggravated assault and battery, to give the defendant the benefit of the doubt and find him guilty of no higher offense than aggravated assault and battery, concluding with a charge on reasonable doubt as applicable to the whole case and fully and completely charging on self-defense, there was no reversible error. Following Pratt v. State, 59 Texas Crim. Rep., 635, and other cases.

Appeal from the District Court of Milam. Tried below before the Hon. J. C. Scott.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Robert Lyles* and *Henderson, Kidd & Gillis,* for appellant.—On question of admitting testimony as to conduct of defendant before the difficulty: McMillan v. State, 65 Texas Crim. Rep., 319, 143 S. W. Rep., 1174; Orner v. State, 65 Texas Crim. Rep., 137, 143 S. W. Rep., 935; Roquemore v. State, 59 Texas Crim. Rep., 568, 129 S. W. Rep., 1120; Owen v. State, 58 Texas Crim. Rep., 261, 125 S. W. Rep., 405; Early v. State, 51 Texas Crim. Rep., 382, 103 S. W. Rep., 868; Holland v. State, 55 Texas Crim. Rep., 27, 115 S. W. Rep., 48.

On question of plea for suspension of sentence: Grisham v. State, 19 Texas Crim. App., 504; Baker v. State, 70 Texas Crim. Rep., 618, 158 S. W. Rep., 998.

On question of defendant's application for habeas corpus: Streight v. State, 62 Texas Crim. Rep., 453, 138 S. W. Rep., 1198.

On question of court's charge on manslaughter: Grant v. State, 65 Texas Crim. Rep., 266, 143 S. W. Rep., 929.

On question of not limiting testimony as to conduct of defendant before the homicide: Wyatt v. State, 55 Texas Crim. Rep., 73, 114 S. W. Rep., 812; Martin v. State, 35 S. W. Rep., 976.

*C. E. Lane,* Assistant Attorney General, for the State.—Cited cases in opinion.

PRENDERGAST, PRESIDING JUDGE.—On a trial for murder appellant was convicted of manslaughter and his punishment assessed at the lowest prescribed by law.

On Saturday night, May 10, 1913, appellant killed George Williams and as a part of the same transaction, and immediately thereafter, he also killed Curtis Bland. The killing occurred in Milam County, about twenty-two miles from Cameron, the county seat. The next day, Sunday, he went to Cameron, surrendered to the sheriff and was placed in jail. On Monday following, complaint was duly filed against him before the Justice Court at Cameron, charging him with the murder of said Williams. The District Court was then in session. On May 15th, the justice entered an order admitting appellant to bail. It seems he did not then make bond. No reason is shown why he did not. On the same date the grand jury returned two bills of indictment against him, one charging him with the murder of said Williams, the other, of said Bland. Capiases in each case were duly issued and served on him and he was then confined in jail under each capias. On the same day his trial for the murder of Williams was set for June 2, 1913 and a special venire of 100 men ordered and issued, returnable May 30th. Because of some defect in the first indictment against him, on May 21st, the grand jury preferred another in lieu of the first, charging the murder of said Williams. This case was set for trial for the same day as under the previous indictment, June 2, 1913, and a special venire of 100 men ordered and issued, returnable May 30th. The latter venire was duly executed by the sheriff, returned within the time, showing that 93 out of the 100 men ordered summoned, had been summoned and were in attendance in obedience thereto on June 2, 1913. The case against him for the murder of Bland had not been set for trial. Sometime on the morning of June 2nd, appellant presented his petition for writ of habeas corpus to Judge Scott, presiding judge, who, it seems, at once granted the application and ordered the sheriff to produce him thereunder at 9:30 o'clock that morning. The district attorney at once made a motion, for various reasons, shown by it, asking the judge to deny said writ of habeas corpus and a hearing at that time on it and proceed to the trial of the case before the jury. The court heard the matter and the evidence thereabouts and on the same day rescinded his order granting the writ of habeas corpus and hearing thereunder and directing that the writ, or application for said habeas corpus, would be heard at some later date,

as early as the business of the court would permit. Thereupon, appellant duly excepted and asked till next morning to file his application for a continuance, which was granted. On the next morning appellant made a motion to continue, claiming substantially, in effect, that while various attorneys had been at once employed by appellant, some of them had been engaged in the trial of cases in said court and did not have much time to investigate the facts of the case; that a large number of the witnesses for the State were the kinsfolk of the deceased and that they had agreed, among themselves, not to tell and would not tell appellant's attorneys what their testimony would be, and that he had a right to bail and to be on bail, while this case was being tried. And that the hearing, under the habeas corpus, was practically their only available method of finding out what the testimony of the said State's witnesses would be.

Under the circumstances and facts of this case, the court did not err in declining to hear the case on habeas corpus, when an application to him for that purpose was first made on the very day the case was set for trial, and a special venire had been duly ordered and were in attendance. No sufficient reason whatever is shown why if appellant desired a hearing on habeas corpus, he did not sooner apply therefor. There was ample time for him to have done so and had a hearing if it was so important to him that he should. This case does not come within the rule in the case of Streight v. State, 62 Texas Crim. Rep., 471. There the application for habeas corpus had been applied for sometime before the trial, and as soon as it could reasonably have been done after indictment found, and no sufficient or good reason was shown why the habeas corpus hearing in that case was not had before the day the case was set for trial. In that case we said: "Of course, the court should not permit continuances to be secured by merely filing an application on the day set for trial of a case, or so short a time before that day as to render it impossible to hear it before the day set for the trial." What we then said particularly applies to this case. The court's action in declining at the time to hear the case on habeas corpus and thereby continue the case was correct. Neither did the court err in not continuing it on appellant's said motion. Creswell v. State, 14 Texas Crim. App., 1.

When appellant's motion for a continuance was overruled on the morning of June 3rd, the cause proceeded to trial and the jury was duly selected and empaneled. After the case had thus gone to trial, sometime the next day and before the indictment was read and appellant entered his plea of not guilty, he filed a sworn plea seeking to have his sentence suspended in the event he was convicted of manslaughter. This clearly was filed too late and the court was not required to submit that plea to the jury for a finding. The statute itself, Act of February 11. 1913, p. 8, expressly requires that when appellant seeks to take advantage of the Suspended Sentence Law he shall file his sworn plea and must file it "before the trial begins" in order to avail himself of it. It is too late if he waits till after the trial begins before he files such plea. Williamson

v. State, 72 Texas Crim. Rep., 618, 163 S. W. Rep., 435; see also Roberts v. State, 71 Texas Crim. Rep., 77, 158 S. W. Rep., 1003; Baker v. State, 70 Texas Crim. Rep., 618, 158 S. W. Rep., 998; Potter v. State, 71 Texas Crim. Rep., 209, 159 S. W. Rep., 846; Monroe v. State, 70 Texas Crim. Rep., 245, 157 S. W. Rep., 154; King v. State, 72 Texas Crim. Rep., 394, 162 S. W. Rep., 890. Without question the trial of this case began as soon as the court overruled appellant's motion for continuance and forced him to trial and the selection of the jury began. C. C. P., arts. 654, 673 and 698.

It is unnecessary to give an extended statement of the evidence in this case, or of the testimony of the respective witnesses. In some matters the testimony was conflicting. Taking it all, it justified the jury to believe and was amply sufficient to show that there was a little neighborhood dance at the house of Mr. Farlett, a relative of the deceased, on said Saturday night, May 10, 1913. Appellant did not live in that neighborhood, but quite a distance away in another neighborhood and was not invited to said party by anybody directly connected therewith. He heard of the party while he was at Rosebud and left Rosebud in the night, went to his home and after or about 9 o'clock that night started to the party, reaching it about 11 o'clock and after the dance had ended and part of the guests had gone home. Before leaving Rosebud he proceeded to provide himself with a bottle of whisky and when he got to his home, just before starting to the party, he further proceeded to load up with a large six-shooter and took with him at the same time said bottle of whisky. While going from his home to the party he proceeded further to "tank up" on the whisky. He was a stranger practically to Mr. Farlett and the whole company dancing. There were only three or four ladies in the whole crowd who danced at all,—perhaps, not exceeding three. There were very few ladies at the party. All three of these ladies who danced were the sisters of the deceased. It seems that the party "broke up" at first because the musicians were not paid what they thought was agreed to. Appellant induced Mr. Farlett to let the dance be renewed, he, appellant, paying the musicians what they claimed, $1.15, and appellant stated to Mr. Farlett he had come a long distance to the dance and under the circumstances desired to dance. Mr. Farlett agreed to this. The room was thereupon cleared out, some of the guests, among them one of appellant's sisters who had returned home, was sent for and she returned to the dance. After dancing awhile appellant, it seems, desired to urinate and proceeded to step out on the gallery of the very small house and urinated on the gallery very near the door of the room where the dancing occurred. While so urinating Mr. Farlett took Mrs. Knouse, one of the deceased's sisters and a little girl out on this gallery to get a drink of water, the drinking water being kept out there. When they stepped out on the gallery, Mr. Farlett, and it seems Mrs. Farlett too, saw appellant urinating on the gallery. She and the little girl at once returned in the room and Mr. Farlett complained to appellant of his conduct. Appellant went back into the house and the dance was re-

sumed and Miss Bettie, another sister of deceased, danced with him. During the dance with her he attempted to take liberties with her person which she resented and because of his conduct she refused longer to dance with him and took her seat. He tried to force Miss Addie Farlett, the sister of the host and also a kins-woman of the deceased, to dance with him. She declined, telling him she didn't dance at all and hadn't danced that night with any other. He took hold of her arm and tried to pull her out and she had to hold to the door-facing to prevent his pulling her out on the floor, and when he did not succeed, he said to her, "God damn you, there ain't a damned decent girl in the house." Appellant then tried to get another sister of the deceased to dance with him. Miss Bettie Williams testified: "I heard him when he asked my sister to dance with him. He asked her to dance with him and she told him that she had four partners, and he says, 'You have a hell of a lot of partners, take your damn partners and go to hell with them,' and then Mr. Farlett asked him please not to be cursing the girls any more, and then Mr. Muldrew said he came to him like a white man and got him to let him dance and he had paid a $1.15 and he would do as he damned please, and so then my brother-in-law, Mr. Knouse, told him if he had paid a $1.15 to go ahead and dance and not be cursing the girls. Mr. Muldrew then says, 'You damn son-of-a-bitch you, if you take it up, just follow me out,' and Mr. Knouse rose up and then my sister she stepped in—my sister was his wife—and she stepped in between them, and Mr. Muldrew hit Mr. Knouse over her shoulder and then hit her twice and then hit my grandma (an old lady about ninety years old) and knocked her under the table, and my brother George was standing at the mantel board and shoved Mr. Muldrew towards the door. My brother had not come up and said or done anything before my grandmother was struck, and then all the crowd rushed in that corner where they were having the scuffle and then my brother stepped around the crowd and Mr. Muldrew caught hold of him on the left arm and jerked him out of the door and they went out of the door together, and I followed them outdoors, and I saw Mr. Muldrew knock my brother off the porch and then he jumped down and shot him. I could not tell what he hit him with when he knocked him off of the porch. My brother fell right at the corner of the porch and Mr. Muldrew jumped off there at the edge where he knocked him off at." Other witnesses testified substantially as did Miss Bettie Williams. The witnesses, even the doctor, differed as to whether any of appellant's shots from his pistol at deceased after he knocked him down struck deceased. Some said one of the wounds on deceased's head was caused by one of the balls striking a glancing shot. Others that all the wounds on deceased's head and face were caused by some blunt instrument. It was reasonably shown none of the balls entered deceased's body. The deceased never regained consciousness after being at least knocked in the head, if not shot by appellant. Appellant shot more than once at the deceased after he had knocked him in the head and knocked him down, and retreated to his buggy hitched immediately in front of the house,

and while getting in, or just after getting in, the young man Bland, whom appellant killed and who was an associate of the deceased, and it seems lived with the deceased's family, at the time ran out to intercept appellant, and thereupon appellant proceeded to shoot and kill him instantly.

Appellant objected to the testimony of Mr. Farlett and several others about him urinating and what occurred thereabouts, and to the testimony of Miss Bettie Williams to the effect that while she was dancing with appellant he tried to take advantage of her, as shown above. There is no question but that all of this testimony was admissible in this case. It was a part of the transaction and all of appellant's said misconduct together was unquestionably the cause of the deceased and others attempting to put him out of the room and appellant killing deceased. Stanley v. State, 44 S. W. Rep., 519; Elmore v. State, 78 S. W. Rep., 520; Moore v. State, 31 Texas Crim. Rep., 234; Washington v. State, 19 Texas Crim. App., 521; Cox v. State, 8 Texas Crim. App., 254; Means v. State, 10 Texas Crim. App., 16.

Appellant requested several special charges which were refused. He also excepted, in his motion for new trial, to some paragraphs of court's charge. The only way he attempts to raise these questions is by quoting the requested charges and quoting the paragraphs objected to and not stating in any way why these special charges should be given, nor pointing out any objection to the portions of the court's charge objected to. It has been so long and well settled by the uniform decisions of this court that these matters only so raised and presented are too general to authorize or require this court to consider them, that we deem it unnecessary to cite the authorities. But see Byrd v. State, 69 Texas Crim. Rep., 35, 151 S. W. Rep., 1068, and cases therein cited; Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884; Berry v. State, 73 Texas Crim. Rep., 203, 163 S. W. Rep., 964.

.However, appellant does pick out one paragraph of the court's charge on manslaughter—"f" hereafter quoted—and complains that by it the court told the jury to convict appellant of manslaughter, regardless of whether or not he intended to kill the deceased or whether he acted in self-defense. If this paragraph was taken by itself, it probably would be subject to appellant's objections. But it is elementary in this State that it is improper to single out and criticise separate paragraphs of a charge. That the whole must be taken into consideration; that in no case of murder or manslaughter can the charge of the court be given in one paragraph alone. It must necessarily and properly be given in many paragraphs and this is universally the case. The court, in submitting manslaughter, correctly, and in accordance with the statute, told the jury what was manslaughter in every way applicable to this case, and charged:

"(e) If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a deadly weapon, or instrument reasonably

calculated and likely to produce death, by the mode and manner of its use, in a sudden passion aroused by adequate cause, as the same is herein explained, and not in defense of himself against an unlawful attack real or apparent reasonably producing a rational fear or expectation of death or serious bodily injury, did shoot with a pistol, and did strike, hit, beat, and wound with a pistol, and did strike, hit, beat, and wound with some blunt instrument, all or any of which said weapons or instruments were reasonably calculated and likely to produce death by the mode and manner of their use, and did thereby kill the said George Williams, as charged in the indictment, you will find the defendant guilty of manslaughter, and assess his punishment in the State penitentiary for any term of not less than two nor more than five years.

"(f)   If you believe from the evidence that the deceased struck the defendant a blow or blows which caused him pain or bloodshed, and the said blow or blows created in the mind of the defendant sudden passion which rendered his mind incapable of cool reflection, and that he killed deceased under such influence of passion, you will find him guilty of manslaughter. Or if you believe from the evidence that from any act or acts done by the deceased or by any others acting with deceased or acting alone, either in the house, on the gallery or in the yard prior to or at the time of the killing, and that said act or acts or any of them, if there were any such, created in the mind of the defendant sudden passion which rendered his mind incapable of cool reflection, you will find him guilty of manslaughter. And in passing upon the condition of the defendant's mind at the time of the killing, you may consider the evidence of such blow or blows, if any, heretofore submitted to you.

"IV.

"(a)   The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears. So, in this case, if you believe from the evidence that the instrument or instruments used were not likely to produce death in the mode and manner of their use, then you are instructed that you could not presume that death was designed, unless you believe from the evidence from the manner in which said instruments were used such intention evidently appears.

"(b)   Where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of homicide, unless it appears that there was an intention to kill, but the party from whose acts death resulted may be prosecuted for and convicted of any grade of assault and battery. So in this case, if you believe from the evidence that the defendant killed the deceased but you further believe that the means as used were not in their nature calculated to produce death, then you will find the defendant not guilty of homicide, unless you believe from

the evidence there was an intention on the part of defendant to kill; but you could under this submission, find the defendant guilty of an aggravated assault and battery and assess his punishment by a fine of not less than twenty-five nor more than one thousand dollars, or imprisonment in the county jail not less than one month nor more than two years, or by both such fine and imprisonment." In addition to this, the court charged the reasonable doubt between murder in each degree and manslaughter, and also between manslaughter and aggravated assault and told them that if they had a reasonable doubt as to whether the offense, if any, was aggravated assault and battery to give the defendant the benefit of the doubt and find him guilty of no higher offense than aggravated assault and battery. He then gave a charge on reasonable doubt as applicable to the whole case, and fully and completely charged self-defense in favor of appellant in every way raised, applicable to the evidence. Under the circumstances of this case, and taking the charge of the court as a whole, it is our opinion that the criticism of the paragraph of the court's charge by appellant does not authorize or require this court to reverse. C. C. P., art. 743 before the recent amendment thereof; Childs v. State, 35 Texas Crim. Rep., 573; 34 S. W. Rep., 939; McGrath v. State, 35 Texas Crim. Rep., 413, 34 S. W. Rep., 941; Smith v. State, 48 Texas Crim. Rep., 233; Foster v. State, 51 Texas Crim. Rep., 77. And see also Puryear v. State, 56 Texas Crim. Rep., 231; Davis v. State, 57 Texas Crim. Rep., 545; Pratt v. State, 59 Texas Crim. Rep., 167; Pratt v. State, 59 Texas Crim. Rep., 635.

As stated above, appellant's penalty was assessed at the lowest prescribed by law. The judgment is affirmed.

*Affirmed.*

[Rehearing denied April 29, 1914.—Reporter.]