## CORTEZ v. STATE.

No. 22028.

Court of Criminal Appeals of Texas.

April 29, 1942.

Ney Wade, of Beeville, for appellant.

Spurgeon E. Bell, State's Atty., of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of 30 years.

The evidence adduced by the State, briefly stated, shows that late in the afternoon of April 19, 1940, Jim Hunt, a constable at Sinton in San Patricio County, accompanied by his son and two other young men, drove in an automobile to Zapata's cafe in Sinton looking for a Mexican who had tried to break into a house. Upon their arrival at the cafe, the constable went in, drank a glass of milk and told the proprietor that he was looking for a Mexican who had tried to break into Pete's house. He then arrested a Mexican boy who was standing just on the outside of the cafe and started with him toward the automobile in which his son and companions were sitting. The father and brother of the Mexican boy undertook to liberate him from restraint by taking hold of his arms and pulling away from the constable, whereupon the constable struck the father on the head with a pistol. This precipitated a general fight in which were engaged the constable, his son and two other companions on one side and appellant and his sons on the other side. The result was that Hunt was stabbed in the abdomen from the effects of which he died a month later. The son and the other two young men were injured in the affray as were also the Mexicans.

The record is silent as to whether or not Hunt (the constable) had a warrant for the arrest of the Mexican boy or had any probable cause to arrest him. The testimony offered by the defendant is to the effect that he and his sons had been at work cutting beets near Corpus Christi; that they left Corpus Christi about 5 P.M., to go to Victoria, their former home, to sell some animals; that they arrived at Sinton about 6 P.M. and stopped at Zapata's cafe to purchase a loaf of bread; that while there the constable arrested Estavan Cortez, son of the appellant, and started to lead him away; that appellant asked the officer where he was taking his son, whereupon the constable struck appellant on the head with a pistol and a free-for-all fight ensued.

It appears from the record that appellant alone was indicted in Cause No. 1798 for the offense of murder and his sons, Bernardo, Juan and Estavan Cortez, were jointly indicted for an offense growing out of the same transaction; they being charged with having committed an assault to murder upon the son of Jim Hunt and his companions.

Appellant, in due time, filed an application for a severance asking that his sons be first put on trial because he verily believed that there was not sufficient evidence against them, or either of them, to secure a conviction; and in case of an acquittal he desired to use their testimony free from any cloud cast thereon by a pending indictment; that their testimony was very material to his defense; that all of the defendants in Cause No. 1799 were then present in court and would not delay the trial of any case. This application was denied by the court, to which appellant duly excepted. It seems to be well settled in this state that where two or more persons are indicted for different offenses, although growing out of the same general transaction, it does not follow in all instances that they are entitled to a severance. French v. State, 98 Tex.Cr.R. 578, 267 S.W. 494; Day v. State, 27 Tex.App. 143, 11 S.W. 36; Clark v. State, 81 Tex.Cr.R. 157, 194 S.W. 157; Cross v. State, 129 Tex.Cr.R. 526, 89 S.W.2d 217. We, therefore, overrule this contention.

Appellant next complains of the court's action in overruling his motion for a continuance based on the absence of Pete Dareous, Juan Castillo, Alfredo Lerma and Guadalupe Perez, setting forth facts which he expected to prove by each of said witnesses and claimed to be very material to his defense. However, in his motion for new trial he merely complains

because the court declined to grant him a continuance on the ground that he was denied the testimony of Juan Castillo. At the hearing of the motion for new trial the witness Castillo appeared and testified that he was not in the town of Sinton at the time Jim Hunt was stabbed and that he did not see any part of the difficulty between the parties engaged therein. Consequently the court's ruling on the application for a continuance fails to reflect any error.

■ Bill of Exception No. 5 shows that after appellant's motion for a continuance was overruled and he was put upon trial and after six jurors had been selected, he made known to the court that he had never been convicted of a felony in this or any other state and desired to file a plea for a suspension of sentence. The court declined to grant him this privilege at that stage of the proceeding, to which he duly excepted and brings the matter to this court for review. It is specifically provided by Article 776, C.C.P., that an application for a suspension of sentence must be filed before the trial begins. This is a statutory provision and the court would not be justified in disregarding the mandate of the Legislature. See Muldrew v. State, 73 Tex.Cr.R. 463, 166 S.W. 156; Trevinio v. State, 93 Tex.Cr.R. 439, 247 S.W. 872.

■ In his motion for new trial appellant asserts that Earl Vickers, one of the jurors who sat on the trial of this case, was disqualified by reason of being related to the deceased in the third degree. The court overruled the motion and appellant duly excepted and brings the matter to this court for review. The facts show that W. C. Hunt, a second cousin of the deceased, Jim Hunt, married a sister of Earl Vickers; and this fact, appellant contends, brings him within the prohibited degree. We do not so construe the relationship of the juror Vickers to the deceased as would disqualify him under Article 5 of Section 11 of the Constitution of this state or the statutes on the subject. We have made a rather diligent search to find any case, decided either by the civil courts or this court, involving the same state of facts, but we were unable to find any. However, the cases of Cox v. Commonwealth, 255 Ky. 391, 74 S.W.2d 346, and Maahs v. Schultz, 207 Wis. 624, 242 N.W. 195, are nearest in point to the one under consideration on the facts constituting the relationship of the juror, and in each instance the relationship was not considered to come within the prohibited degree. It may not be amiss to here call appellant's attention to the old and familiar adage:

"The groom and bride each come within,
The circle of each other's kin,
But kin and kin are still no more
Related than they were before."

It appears from the opinion in the case of Cox v. Commonwealth, supra, that the juror in question was a second cousin of the wife of the brother of the deceased and an uncle of the wife of such juror had married a niece of the deceased. The court held that the juror was not related to the deceased by consanguinity or affinity. In the last-mentioned case, the juror in question, whose sister had married a cousin of plaintiff's wife, was held not so closely related to the latter as to be disqualified to sit in the trial of that case.

■ Appellant next complains of the court's action in declining to respond to his objection to the charge because the court had failed to instruct the jury upon appellant's legal right to intercede in behalf of his son for the purpose of extricating him from an unlawful arrest. It seems to be well settled in this state that "a person may interfere to prevent the illegal arrest of another or to aid him in escaping therefrom, and may do for him in this connection whatever he would have a right to do for himself." See 22 Tex.Jur. p. 520, sec. 76. The rule is also stated that "any third person may lawfully interfere to prevent an illegal arrest to the same extent as the person whose arrest is attempted." See Tex.Jur. Vol. 4, p. 786, sec. 29; also Dyson v. State, 14 Tex.App. 454; Miers v. State, 34 Tex.Cr.R. 161, see page 186, 29 S.W. 1074, 53 Am.St.Rep. 705; Lynch v. State, 41 Tex.Cr.R. 510, 57 S.W. 1130.

■ It is our opinion that the evidence raised the issue of an illegal arrest and false imprisonment by deceased of the appellant's son, because there is not any evidence that the deceased had a warrant for his arrest, nor that the arrested party had committed any offense in the presence of the deceased which authorized the arrest without a warrant. Article 243, C.C.P., provides as follows: "In executing a warrant of arrest, it shall always be made known to the accused under what authority the arrest is made; and, if requested, the warrant shall be exhibited to him."

498

 It occurs to us that where the evidence fails to show that this provision of said article was complied with, the presumption obtains that the arrest was illegal; and such seems to us to be the holding of this court in the case of Montgomery v. State, 43 Tex.Cr.R. 304, 65 S.W. 537,.55 L.R.A. 866. The fact that he may have submitted to an illegal arrest would not convert the unlawful act into a lawful one, nor does it deprive the arrested person of the right to extricate himself from such illegal restraint or false imprisonment. This being true, appellant had the legal right to extricate his son from illegal restraint or false imprisonment, and having such legal right, what instruction did the court give the jury on the subject? None. Let us admit that one person out of about thirty who were present at the scene of the difficulty testified that the fight was over and appellant's son was released from restraint when the fatal injury was inflicted upon the deceased, and let us concede for the sake of argument that his right of self-defense had ceased to exist, yet, if the illegal arrest or the striking by the deceased of the appellant with a pistol, either or both, would have created in the mind of a person of ordinary temper that degree of anger, rage or sudden resentment which rendered the mind' incapable of cool reflection, and that it did produce that condition of appellant's mind, and while in such state of mind, he stabbed the deceased, then what was his offense and what should his punishment be? Suppose this matter had been submitted to the jury by an appropriate instruction and they had found that appellant stabbed the deceased while in such a state of mind, then what should they do? They had neither a guide, compass nor yardstick by which to determine his offense or the punishment. In the absence of any instruction on the subject, appellant stood before the jury as the aggressor from start to finish without any mitigating fact or circumstance to be considered by them. He was stripped of everything except the bare right of self-defense. Under the law, the court is required to instruct the jury as to the law applicable to the facts of the case, but in this respect he failed. The court also failed to make application of Article 1257c, Vernon's Ann.P.C., to the case.

From what we have said, it follows that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.